In re Gary Michael VUNOVICH, Debtor.

Henry W. GREEN, Trustee Plaintiff,

v.

Gary Michael VUNOVICH and Beneficial Finance Company Of Kansas, Inc., Defendants.

Bankruptcy No. 86–20302.
Adv. No. 87–0004.

United States Bankruptcy Court, D. Kansas.

June 12, 1987.
Order Amending June 15, 1987.

and local income taxes, and deposit accounts in any state or federally chartered depository insti- tution." D & C § 283 subd. 2.

John T. Flannagan, Olathe, Kan., for debtor.

Henry W. Green, Leavenworth, Kan., trustee/plaintiff.

Jack N. Bohm, Leawood, Kan., for defendant, Beneficial.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Chief Judge.

This matter came for trial on May 8, 1987, on the trustee's section 547 preference complaint. Henry W. Green appeared as trustee and attorney for trustee. The defendant, Beneficial Finance Company of Kansas, Inc., appeared by counsel, Jack N. Bohm.

### FINDINGS OF FACT

Based on the pleadings, the exhibits, the testimony, the record, and statements of counsel, this Court finds as follows:

1. This Court has jurisdiction over the parties and the subject matter; venue is proper.

2. On March 11, 1985, the debtor, Gary Vunovich, and his wife, Debbie Vunovich, entered into a "Revolving Loan Agreement" for an unsecured line of credit of $3,500. The agreement contains the following description:

> DESCRIPTION OF ACCOUNT—When you sign this Revolving Loan Agreement ("Agreement") and you promise to repay the Unpaid Balance plus Finance Charge and insurance costs, if any, we agree to set up a Revolving Loan Account ("Account") for you, and we will make cash advances to you up to the Credit Line shown below. You will receive an Initial Cash Advance when the Account is opened, and you will be sent blank checks covering the difference between the Initial Cash Advance and the Credit Line. We will make future cash advances as long as the Account remains open and in good standing, and we will continue to send you blank checks to allow you to obtain the difference between your Unpaid Balance and your Credit Line. These checks cannot be cashed for an amount over the unused portion of your Credit Line at the time a check is cashed.

3. Vunovich took an initial advance of the total amount, $3,500, on March 11, 1985.

4. Vunovich testified that he obtained the line of credit for use in his business, The Computer Service Company, to buy inventory.

5. Vunovich made four payments of $94.68 on May 13, 1985, June 14, 1985, July 17, 1985, and August 13, 1985. Vunovich made a payment of $2,000 on September 10, 1985. Vunovich made four more payments of $94.68 on October 29, 1985, November 4, 1985, December 14, 1985, and January 6, 1986. Vunovich made all the payments with a company check.

6. Vunovich took a $2,000 advance on the line of credit on January 22, 1986.

7. Vunovich made a payment of $3,181.31 on February 24, 1986. He made this payment by personal money order.

8. Four days later, on February 28, 1986, Vunovich filed a petition for relief under Chapter 7 of Title 11 of the United States Code.

9. After the filing of the petition, Vunovich continued to use the line of credit. Vunovich made several payments and took several advances up until the time the trustee filed the adversary.

10. On January 7, 1987, the trustee, Henry W. Green, filed a complaint alleging a preferential transfer under section 547 against Vunovich and Beneficial Finance Company.

## CONCLUSIONS OF LAW

There is no question and the parties agree that the transfer by Gary Vunovich to Beneficial Finance Company of Kansas, Inc. (hereinafter "Beneficial") of $3,181.31 constituted a preferential transfer under section 547(b) of the Code. Only four days prior to filing of the chapter 7 petition, the debtor nearly paid off his debt to Beneficial by transferring the $3,181.31.

The disagreements in this case arise under the affirmative defenses of sections 547(c)(2) and (4). This Court notes that the burden is on the defendant/creditor to prove each of the elements of the exceptions by a preponderance of the evidence. *See* 11 U.S.C. § 547(g). *See also In re Richter & Phillips Jewelers & Distributors, Inc.*, 31 B.R. 512, 515 (Bankr.S.D.Ohio 1983).

First, Beneficial contends that the $3,181.31 transfer falls within the ordinary course of business exception of section 547(c)(2). This section is intended to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee. 4 Collier on Bankruptcy ¶ 547.10 (15th ed. 1987). To fall under the ordinary course of business exception, Beneficial must show that: (1) the underlying debt on which payment was made was "incurred in the ordinary course of business or financial affairs" of both parties; (2) the transfer was made "in the ordinary course of business or financial affairs" of both parties; and (3) the transfer was made "according to ordinary business terms." 11 U.S.C. § 547(c)(2).

This Court must find that Beneficial failed to prove the last element of the exception because the transfer was not made according to the ordinary business *terms* of the debtor and Beneficial. The payment of $3,181.31 greatly exceeded the ordinary monthly payment of $94.68. *See In re Williams*, 5 B.R. 706 (1980). Furthermore, the payment was made by a personal money order rather than by the usual business check. *See In re Gray Oil Company*, 785 F.2d 1563, 14 B.C.D. 553 (11th Cir.1986).

Second, Beneficial contends that the $3,181.31 transfer is protected by the subsequent advance exception of section 547(c)(4) which provides:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

In other words, even though a creditor has received a preference, the creditor may still offset against a preference claim any subsequent unsecured credit which was extended to the debtor. This exception removes the unfairness of allowing the trustee to void all transfers made by the debtor to a creditor during the preference period without giving the creditor any corresponding credits for subsequent advances of new value to the debtor's estate. *See* 4 Collier on Bankruptcy ¶ 547.12 (15th ed. 1987).

The Court is unclear as to what exactly the creditor's theory is in this case. In its trial brief, Beneficial appears to focus entirely on the *post-petition* advances as the subsequent advances. The brief stated:

In the instant case, Beneficial did make subsequent advances to Mr. Vunovich after his February 24, 1986 payment. These advances were in fact unsecured. The dates and amounts of the advances are as follows: $1,500.00 on May 21, 1986; $418.00 on August 18, 1986; $600.00 on September 24, 1986; $1,500.00 on November 17, 1986; $700.00 on December 12, 1986; and $800.00 on December 24, 1986. These advances total $5,518.00, which well exceeds the $3,181.31 payment Mr. Vunovich made to Beneficial on or about February 24, 1986. Of these advances, $3,501.55 remains unpaid. Even under this limited "net result rule" the amount of money Beneficial is entitled to offset against the allegedly "preferential" payment exceeds the

amount of the payment itself. Therefore, under § 547(c)(4) Beneficial should not be reuqired [sic] to turn over the $3,181.31 payment to the bankrupt's trustee.

At the trial, however, Beneficial appeared to shift its stance to focus more on the instant replenishment of the line of credit upon the $3,181.31 payment as the subsequent advance of new value.

Under either theory, however, this Court must find that Beneficial's claim must fail. For a preferential transfer to be saved from avoidance under section 547(c)(4), a very clear cut order of events must have taken place. First, the creditor must have received an otherwise voidable preference under section 547(b). Second, after receiving the preferential transfer, the preferred creditor must advance additional credit to the debtor on an unsecured basis. Third, that additional post-preference unsecured credit must be unpaid in whole or in part as of the date of the petition. *See In re Almarc Manufacturing, Inc.*, 62 B.R. 684, 15 C.B.C.2d 342 (Bankr.N.D.Ill.1986).

In this case, if the Court looks at the actual post-petition advance as the possible subsequent advance, then logic demands that the Court cannot find the third element, that the credit is unpaid as of the date of the petition. Clearly the section only applies to unsecured credit advanced *during the preference period. See* 4 Collier on Bankruptcy ¶ 547.12, n. 5 (15th ed. 1987).

Furthermore, looking at replenishment of the line of credit theory as the possible subsequent advance, the Court cannot find that Beneficial actually advanced additional *credit* to the debtor on an unsecured basis (element 2). The debtor did not actually use the line of credit between the date of the preferential transfer, February 24, 1986, and the date of the petition, February 28, 1986. The renewed availability of a line of credit to the extent of payments made on account of an existing debt cannot be considered the extension of new credit. New credit is extended only when the debtor actually used the line of credit by obtaining cash advances. *See In re Rustia*, 20 B.R. 131, 6 C.B.C.2d 917, 922 (Bankr.S.D.N.Y.1982) (court found that no new credit is extended until the debtors actually availed themselves to a line of credit under a Mastercharge or Visa account).

The Rustia court's analysis is clearly in line with the major purpose behind section 547(c)(4): the extension of new credit in an amount equal to a preference "in effect returns the preference to the estate." *See In re American International Airways, Inc.*, 56 B.R. 551 (Bankr.E.D.Pa.1986). The estate is not augmented until the debtor actually uses the line of credit.

Finally, the Court must note that Beneficial plead section 547(c)(1) but failed to argue the contemporaneous exchange of new value exception at trial. For the record, this Court would also deny the exception because Beneficial failed to show they extended any additional new value. The analysis is the same as under section 547(c)(4). *See In re Rustia*, 20 B.R. 131, 6 C.B.C.2d 917, 922 (Bankr.S.D.N.Y.1982).

For the above reasons, the Court finds that judgment should be for the plaintiff/trustee, Henry W. Green, and against the defendants, Gary Michael Vunovich and Beneficial Finance Company of Kansas, Inc., in the amount of $3,181.31.

The foregoing Memorandum Constitutes Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.

## ORDER AMENDING JUNE 12, 1987 MEMORANDUM OPINION AND JUDGMENT ON DECISION OF COURT

Pursuant to Bankruptcy Rule 9024 and Federal Rules of Civil Procedure 60, this Court now amends its Memorandum Opinion and Judgment on Decision of Court issued June 12, 1987, which granted judgment against both defendant/debtor, Gary Michael Vunovich, and defendant/creditor, Beneficial Finance Company of Kansas, Inc., in the amount of $3,181.31. The judgment for a preferential transfer should

only be against the defendant/creditor, Beneficial Finance Company of Kansas, Inc., and not against the debtor/defendant, Vunovich. *See* 11 U.S.C. § 550(a)(1).

IT IS THEREFORE, BY THE COURT, ORDERED That the prior June 12, 1987 judgment is ONLY against Beneficial Finance Company of Kansas, Inc., and NOT against Gary Michael Vunovich.