**In re Darrell Larry WESSELS and Elaine Joyce Wessels, Debtors.**

**PACKARD ELEVATOR COMPANY, INC., Shell Rock Elevator Company, United States of America, Commodity Credit Corporation, Parkersburg State Bank, First National Bank of Waverly, Iowa, Plaintiffs/Appellees,**

**v.**

**Darrell Larry WESSELS and Elaine Joyce Wessels, Defendants/Appellants.**

**No. 2C 86–3139.**

United States District Court, N.D. Iowa, C.D.

Sept. 2, 1987.

Kristin Tolvstad Davis, Cedar Rapids, Iowa, for plaintiffs/appellees.

Alfredo Parrish, Des Moines, Iowa, for defendants/appellants.

DONALD E. O'BRIEN, Chief Judge.

This matter comes to the Court on an appeal from an order of the bankruptcy court denying a discharge to the debtors under § 727(a)(4) for making false oaths in connection with their bankruptcy case. For the following reasons, judgment is affirmed with regard to Debtor Darrell Wes-

sels and is reversed with regard to Debtor Elaine Wessels.

The debtors are farmers who jointly filed a Chapter 11 petition on November 3, 1983, and later converted their case to a Chapter 7 proceeding on April 23, 1984. In each petition they failed to list a major transaction and a real property interest, and those omissions are the basis for their creditors' attempt to deny them a discharge.

On October 29, 1983, four days prior to the filing of the Chapter 11 petition, Darrell Wessels and his brother Dale Wessels took two wagon loads of beans from Darrell Wessels' farm to an elevator many miles away in Osage, Iowa. The beans were sold in the name of Dale Wessels, and Dale Wessels accepted the check received from the sale, cashed it and gave the cash to Darrell. Darrell then used the money to pay his former bankruptcy attorney, David S. Kelsen. According to Darrell Wessels' testimony, Kelsen had demanded a $7,000 retainer fee before he would file the debtors' Chapter 11 petition.

On their Chapter 11 and Chapter 7 petitions, the debtors did not disclose the sale of beans in response to either of the following questions:

H. Have you made any gifts, other than ordinary and usual presents to family members and charitable donations during the year immediately preceding the filing of the original petition herein? Have you made any other transfer, absolute or for the purpose of security, or any other disposition which was not in the ordinary course of business during the year immediately preceding the filing of the original petition herein?

In a Rule 2004 deposition held on November 16, 1983,[1] Darrell Wessels engaged in the following exchange with a creditor's attorney:

Q. Did you sell any grain or dispose of any grain to persons other than [the Shell Rock Elevator Company, the Packard Elevator, Sinclair Grain Elevator or Schmadeke Feed Mill]?

A. Pardon?

Q. Did you sell or dispose of any of the 1983 crop to persons other than these four elevators?

A. Ah, only the grain designated as— for instance the Schoeman—which was delivered to Sinclair. Elizabeth Alberts which was delivered to Packard. Keith Ressler, which was sent to Shell Rock.

Q. You didn't deliver any grain to, for instance, Shear Elevator in Bristow?

A. No, no.

Q. Any elevators out of the county?

A. No. I delivered—I delivered no grain to any other elevator, other than these four elevators that we mentioned this fall.

(November 16, 1983 Deposition at 47).

Explaining these answers in a later deposition, Darrell stated that "I did not sell the beans. . . . Even though it was my beans. And I guess to be truthful, I evaded your question." (Exhibit 14 at 63). During the bankruptcy court's hearing on December 17, 1985, Darrell contended that it was his brother Dale who actually sold the grain after Darrell delivered it to him, and that his brother gave him the proceeds from the sale so that Darrell could file his Chapter 11 petition.

Debtor Elaine Wessels inherited a one-third remainder interest in a piece of land from her father, and this interest was held in trust for her benefit. Her mother holds a life estate and possession of the land. The debtors were required to list all real property in which they hold an interest "including equitable and future interests," but this one-third remainder was not listed on any of their petitions. Each debtor signed each petition under penalty of perjury and an oath that the answers were true

---

**1.** Like its predecessors under the old Bankruptcy Rules, a Rule 2004 deposition is designed to be "a searching inquiry into the condition and estate of the bankrupt, to assist in discovering and collecting the assets and to develop facts and circumstances which bear on the question of discharge." *Bronston v. United States,* 409 U.S. 352, 357, 93 S.Ct. 595, 599, 34 L.Ed.2d 568 (1973).

and correct to the best of their knowledge, information and belief.

Section 727(a) of the Bankruptcy Code creates several exceptions to the general rule that debtors are entitled to discharge their debts in bankruptcy. Unlike the exceptions in § 523, these exceptions focus on the debtor and his conduct, rather than specific debts. If a debtor falls within a 727 exception, all of his debts are nondischargeable.

The exception embodied in § 727(a)(4) is known as the "bankruptcy crimes" exception, and denies a discharge to any debtor who "knowingly or fraudulently, in or in connection with the case—

    (A) made a false oath or account;

    (B) presented or used a false claim;

    (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property or advantage, for acting or forbearing to act; or

    (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs."

The 727(a) exceptions apply directly in Chapter 7 proceedings and indirectly in Chapter 11 cases pursuant to § 1141(d)(3).

The bankruptcy court, the Honorable Thomas Wood presiding, denied the Wessels a discharge after finding that they knowingly and fraudulently made a false oath or account in connection with their bankruptcy case. There is no question that by signing the petitions, the Wessels made oaths concerning the sale of beans and the remainder which were in fact false, and there is no question that the statements and omissions were material to their case. The controverted issue on appeal is whether they were knowingly and fraudulently made.

The proceedings before the bankruptcy court were rather unusual. The creditors moved for summary judgment, and an adversary hearing was held. However, evidence was submitted during the hearing, and the court's order is captioned as Find-

ings of Fact and Conclusions of Law. Although neither party objected to the proceedings used below, the Court must decide whether to evaluate the decision below under standards for review of summary judgments or the more deferential standards for review of findings of fact and conclusions of law. The risk of unfair surprise to the non-movants under these circumstances is too great to permit the bankruptcy court to reach the merits without full warning prior to the hearing that findings of fact would be made. Thus, although evidence was submitted and testimony was taken in the hearing below, the Court finds that the bankruptcy court's decision should be treated as a grant of summary judgment. The "clearly erroneous" rule will not be used, and the existence of any genuine issue of material fact will warrant a reversal.

■ The bankruptcy court did not analyze the intent of Darrell and Elaine Wessels separately. This Court believes this was an error. In *In the Matter of Reed,* 700 F.2d 986 (1983), the Fifth Circuit held that "the intent to defraud requisite under 11 U.S.C. § 727 must be shown for each debtor." 700 F.2d at 993. It further held that the Bankruptcy Code "does not allow attribution of intent from spouse to spouse." *Id.* The *Reed* court upheld a decision granting a discharge to an innocent spouse while denying it to her jointly filing husband. For this reason, the Court will determine whether a genuine issue of material fact exists concerning the intent of *each* of the Wessels.

■ The bankruptcy court expressly found that Darrell Wessels' conduct could only give rise to an inference of fraudulent intent. This Court also has difficulty drawing any other inference from his conduct relating to the sale of beans. The deposition gave him a perfect opportunity to show that his failure to disclose the transaction was an innocent omission. Instead, he used the deposition to perpetuate the deception by stating under oath that he had not sold grain to any other elevator. Even if he truly believed that his attorney would have listed the transaction in the petition if

it had been legally necessary, Darrell could not have honestly believed that the law permitted him to deceive his creditors in the deposition.

> The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the debtor's hands during the period prior to his bankruptcy. While a false statement in the schedules or statement of affairs due to mere mistake or inadvertence is not sufficient for a denial of discharge—fraudulent intent is not necessary to bar a discharge, the courts have held that a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge.

*In re Diodati*, 9 B.R. 804, 807–08 (Bankr.D. Mass.1981) (citations omitted). The Court believes that the bankruptcy court correctly found that the undisputed evidence shows that Darrell Wessels had this type of intent, and this portion of the bankruptcy court's decision is affirmed.[2]

However, the Court believes that a genuine issue of material fact exists concerning the intent of Elaine Wessels. The Wessels' failure to list her remainder interest, combined with Mrs. Wessels' weak justifications, constitute the best basis for an inference that she acted fraudulently. She testified during the bankruptcy hearing that she failed to list it because she believed it had no value, despite the fact that she and her husband attempted to use it as collateral several months before the petition was filed. However, her testimony in the bankruptcy court hearing indicates that she believed it was valueless because the effort to use it as collateral to obtain credit had failed, and she may have believed it was not necessary to list valueless interests. (Tr. at 57). This testimony gives rise to an inference that she failed to have the remainder interest listed out of ignorance or misunderstanding, rather than a knowing and intentional attempt to conceal the interest from creditors in order to prevent it from becoming part of the bankruptcy estate. The meaning of the legal term "future interest" is not a matter of common knowledge, and an inference that Mrs. Wessels misunderstood the legal significance of her remainder interest is rational. While the bankruptcy court may have been in a position to evaluate her demeanor when she testified at the hearing, questions of credibility and veracity cannot be resolved on summary judgment. *Landrum v. Moats*, 576 F.2d 1320, 1329 (8th Cir. 1978). In addition, there is certainly a material question of fact as to whether Mrs. Wessels shared her husband's fraudulent intent concerning the sale of beans on the eve of bankruptcy. For these reasons, the Court must reverse the bankruptcy court's decision denying a discharge to Mrs. Wessels and require the bankruptcy court to hold a trial on that question.

IT IS THEREFORE ORDERED that the decision of the bankruptcy court denying a discharge to Darrell Wessels is affirmed.

IT IS FURTHER ORDERED that the bankruptcy court's decision denying a discharge to Elaine Wessels is reversed and remanded for a trial on this issue.

---

**2.** The debtors emphasize that they filed an amendment to their petitions correcting the omissions, and contend that this contradicts the inference of a fraudulent intent. However, these amendments were filed over two years after the initial petition, well after it became clear that the debtors were in deep trouble and that their previous omissions might destroy their bankruptcy. Because the circumstances changed so radically between the filing of the petitions and the filing of the amendment, the amendment cannot give rise to an inference that the debtors acted honestly two years before then. *See also In re Ingle*, 70 B.R. 979, 984 (Bankr.E.D.Wis.1987).