In re CIRCLEVILLE
DISTRIBUTING CO., Debtor.

**Larry E. STAATS, Trustee, Plaintiff,**

v.

**BRANHAM SIGN CO., Defendant.**

Bankruptcy No. 2–84–02352.
Adv. No. 2–86–0208.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Feb. 16, 1988.

Larry E. Staats, Columbus, Ohio, Trustee.

Richard Innis, Columbus, Ohio, for defendant.

**OPINION AND ORDER ON
COMPLAINT TO AVOID
TRANSFER**

DONALD E. CALHOUN, Jr.,
Bankruptcy Judge.

This matter is before the Court following trial of a complaint filed by Larry E. Staats, trustee (plaintiff herein). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(F). The following opinion and order constitutes findings of facts and conclusions of law pursuant to Bankr.R. 7052.

The Circleville Distributing Company (debtor) filed a voluntary petition in bankruptcy with this Court on August 7, 1984. Thereafter, the trustee, (plaintiff herein) brought this action under 11 U.S.C. § 547(b) to recover from the defendant, Branham Sign Company, the amount of $9,000.00, representing alleged transfers on an antecedent debt within ninety days prior to the filing of bankruptcy. At trial, the plaintiff reduced his claim to $7,000.00.

Specifically, the $7,000.00 the plaintiff seeks to recover was for amounts paid by the debtor to the defendant for his services in installing, maintaining and removing signage at the debtor's place of business. Three separate payments were made: the first on May 11, 1984 for $3,000.00; the second on May 18, 1984 for $2,000.00; and the third on May 25, 1984 for $2,000.00. The defendant contends that these payments are excepted from recovery pursuant to 11 U.S.C. § 547(c)(1) and (2) because they were made as a contemporaneous exchange for new value given, and because they were made in the ordinary course of business.

The testimony and evidence adduced at trial established that the payments were made for services from September, 1983 to June, 1984. The defendant's owner, Tom Branham, testified that in his normal course of business, he invoiced customers upon the completion of services, and, expected payment for those services within thirty (30) days from the issuance of the invoice. He further testified that by April of 1984, he had provided services to the debtor in the approximate amount of $13,-000.00, for which the debtor had not fully paid. In April, the debtor requested additional services, at which point the defendant informed the debtor that no further services would be provided unless payment of the arrearage was made. The debtor then made a partial payment on the account, leaving a balance due to the defendant of approximately $6,000.00. Thereafter, the defendant performed additional services for the debtor up to June, 1984.

The provisions of the Bankruptcy Code applicable to the instant case are found under 11 U.S.C. § 547(b) and (c), which state in pertinent part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition, or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms; ...

The defendant-creditor has the burden of proving by a preponderance of the evidence that the transactions subject to avoidance fall "within the ordinary course of business of both the debtor and the transferee and made according to ordinary business terms." *In re Southern Indus. Banking Corp.*, 72 B.R. 512, 515 (Bankr.E.D.Tenn. 1987), as cited in *Warren v. Huntington National Bank (In the Matter of Ullman)*, 80 B.R. 101 (Bankr.S.D.Ohio 1987). The court in *Ullman* went on to observe that:

According to the legislative history of § 547(c)(2), this defense was intended to "[P]rotect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the Debtor and the transferee. H.R.Rep. No. 95–595, 95th Cong., 1st Ses., 373–374 (1977), U.S.Code Cong. and Admin.News 1978, pp. 5787, 6329, 6330." *Matter of Van Huffel Tube Corp.*, 74 B.R. 579, 588 (Bankr.N.D.Ohio 1987). "The intent was to insulate ordinary trade credit transactions that are kept current. Thus, payments made to employees, suppliers, and others for operating expenses or trade

credit transactions were intended to be exempt from recovery (citation omitted)" *Southern Indus.* at 515. Section 547(c)(2) "[S]hould protect those payments which do not result from 'unusual' debt collection or payment practices. To the extent an otherwise 'normal' payment occurs in response to such practices, it is without the scope of § 547(c)(2)." *In re Craig Oil Co.*, 785 F.2d 1563, 1566 (11th Cir.1986).

The Court cannot conclude that the payments made by the debtor to the defendant in this case were made in the ordinary course of business. Rather, the Court finds that the payments were made only after the defendant refused to perform additional work unless the debtor paid on the arrearage. Untimely payments are not regarded as within the ordinary course of business, and especially so here where Mr. Branham testified that he expected payment within 30 days from the date of invoice. *In re Craig Oil Co.*, 785 F.2d 1563 (11th Cir.1986); *Matter of Van Huffel Tube Corp.*, 74 B.R. 579 (Bankr.S.D.Ohio 1987); *Ullman* at 103. Furthermore, based upon Mr. Branham's testimony, the Court cannot conclude that the payments were usual as between the parties. *Ullman* at 103; see also, *In re Vunovich*, 74 B.R. 629 (Bankr.D.Kan.1987); *Southern Indus. Banking Corp.*, 72 B.R. 512 (Bankr. E.D.Tenn 1987); *In re Western World Funding, Inc.*, 54 B.R. 470 (Bankr.D.Nev. 1985).

The defendant relies on the case of *In re Magic Circle Energy Corp.*, 64 B.R. 269, 15 C.B.C.2d 658 (W.D.Okl.1986) in support of its position that the payments were made in the ordinary course of business. The defendant argues that its demand for payment before additional work would be performed, and the payment by the debtor on that arrearage, effected a restructuring of the debt. That restructuring, defendant argues, did not change the fact that the original debt was "incurred under normal circumstances, made in the ordinary course of business and not unusual or extraordinary for purposes of section 547(c)(2)." *Magic Circle* 64 B.R. 269, 15 C.B.C.2d at 658. Indeed, the court in *Magic Circle*, 64 B.R. 269, 15 C.B.C.2d at 663 did hold that:

"The mere restructuring of the payment terms does not alter the fact that the debt was incurred under normal circumstances." Yet, that decision was based on the court's recognition that the consolidation of the debt owed into a long-term promissory note, was a normal and ordinary practice in the oil and gas industry. The court observed, 64 B.R. 269, 15 C.B.C.2d at 665 that:

> The issue is whether the transactions were made pursuant to the ordinary terms of the oil and gas industry.

The court then concluded that:

> While there was no direct evidence offered as to what "ordinary business terms" were in the oil and gas industry in 1983, this court is sufficently familiar with such industry to take judicial notice that a workout which contemplated a promissory note at eight percent per annum payable in monthly installments over a period of seven years was well within "ordinary business terms". *Id.*

Moreover, the court in *Magic Circle*, 64 B.R. 269, 15 C.B.C.2d at 663–664 noted a marked difference between the restructuring of a debt under the terms of a promissory note, and unusual or extraordinary payments made on an account in response to a creditor's sudden demand for payment before additional services would be rendered.

The case of *Production Steel, Inc. v. Sumitomo Corporation of America (In re Production Steel, Inc.)*, [14 C.B.C.2d 185] 54 Bankr. 417 (Bankr.M.D.Tenn. 1985) is illustrative of the factors which a court considers when determining whether a transaction was "made in the ordinary course of business." The facts in *Production Steel* were as follows. Prior to the filing of bankruptcy the debtor on three separate occasions had purchased steel from the creditor. With respect to the transaction which was sought to be determined as preferential, the creditor radically altered its course of dealing with the debtor, aware of the debtor's deteriorating financial condition. Specifically, for the first time the creditor required that the debtor secure the purchase price with a letter of credit. A substantial down payment, previously

unrequired, was demanded and received before the creditor would place the steel for fabrication. The terms in each of the three prior transactions called for payment thirty days after delivery and the debtor was invoiced accordingly. However with respect to the transfer before the court, the creditor had demanded that the balance of the contract price be made before due under the contract, with demand accompanied by a threat to call upon the letter of credit. Lastly, a post-dated check was issued and accepted. As the court noted, "[t]hese variations from the usual course of dealings are significant and revealing. All of the changes resulted in further security and safety for [the creditor]." *Id.* at 423. The court went on to state that the variations "were required or encouraged by [the creditor] and none can be said to have benefited [the debtor]." *Id.* "All the demanded changes are consistent with the view that [the creditor] knew of the debtor's financial problems and wanted more favorable terms than in the past." *Id.*

The Court finds that the situation presented in the case at bar to be more akin to that faced by the court in *Production Steel.* In the instant case, the defendant, after allowing an arrearage to accumulate, demanded that payment on the arrearage be made by the debtor before further work would be done. Those payments subsequently made by the debtor to the defendant, therefore, cannot be characterized as usual and ordinary.

Lastly, the Court cannot find that the transfers at issue were a contemporaneous exchange for new value given. This conclusion is premised on a recognition of what is meant by "new value", as that term is defined under 11 U.S.C. § 547(a)(2):

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not in-

clude an obligation substituted for an existing obligation ...

Collier on Bankruptcy notes that:

Unlike the definition of "value" in U.C.C. § 1–201(44), this definition does not include the substitution of an obligation for an already existing obligation, or, obviously, satisfaction of an antecedent debt. In addition, it provides that the transaction must be "neither be void nor voidable by the debtor or the trustee under any applicable law." 4 COLLIER ON BANKRUPTCY ¶ 547.02[2].

As the facts in the instant case indicate that the transfers were made by the debtor on an outstanding debt and in response to the defendant's demand, and because those transfers are voidable by the trustee, the Court is unable to find a contemporaneous exchange for new value given.

In conclusion, the Court finds that the transfers from the debtor to the defendant were not made in the ordinary course of business, and were not a contemporaneous exchange for new value given. Accordingly, the Court finds that the trustee may avoid the transfers made by the debtor to the defendant in the amount of $7,000.00.

IT IS SO ORDERED.