**FIRST SOFTWARE CORP., Appellant,**

v.

**MICRO EDUCATION CORP. OF AMERICA, Appellee.**

Civ. A. No. 88–1317–WF.

United States District Court,
D. Massachusetts.

Dec. 5, 1988.

---

MEMORANDUM AND ORDER

WOLF, District Judge.

First Software Corporation, ("First Software"), has appealed the decision of the Bankruptcy Court, Gabriel, J., to allow Micro Education Corporation of America's, ("MECA"), motion for summary judgment. For the reasons stated below, the Bankruptcy Court's granting of MECA's motion is affirmed.

**I. FACTS AND PRIOR PROCEEDINGS**

On May 20, 1987, First Software commenced this proceeding against MECA seeking recovery of $303,354.92 for allegedly preferential payments and transfers of property made by First Software to MECA within 90 days preceeding the filing of First Software's bankruptcy petition. The petition was filed on April 19, 1986. On January 22, 1988, MECA filed a motion for summary judgment contending that its payments were made in the ordinary course of business pursuant to 11 U.S.C. § 547(c)(2). On February 4, 1988, First Software filed a cross motion for summary judgment on the grounds that the requirements of 11 U.S.C. § 547(b) were satisfied and that the transfers had not been made in the ordinary course of business. On April 26, 1988, after a hearing on the motions, the Bankruptcy Court granted summary judgment for MECA. On May 5, 1988, First Software filed the instant appeal.

MECA began doing business with First Software in 1984. MECA's principal product was a software program entitled "Managing Your Money." MECA's invoices typically required payment within 90 days, but First Software's payments were rarely made within the invoice terms. Because consumer demand for the program was strongest at the end of each calendar year and in the first quarter of the succeeding year, First Software purchased over $900,000 of the MECA product during the three months preceeding December 31, 1985. In January of 1986, as the invoices pertaining to the purchases became due, First Software orally agreed to make weekly payments of $100,000 to MECA until its balance was reduced to zero. In accordance with the agreement, First Software made three $100,000 payments to MECA during February of 1986. The payments were made by uncertified corporate checks drawn on the general checking account of First Software.

## II. CONCLUSIONS OF LAW

### Standard of Review

An appeal from a Bankruptcy Court is governed by Bankruptcy Rule 8013. Rule 8013 provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Under Rule 8013, district courts must review the Bankruptcy Court's conclusions of law *de novo*. *In re Pizza of Hawaii, Inc.*, 40 B.R. 1014 (Bankr. D.C. Hawaii) *aff'd*, 761 F.2d 1374 (9th Cir.1985); *Goldsby v. Stewart*, 46 B.R. 692 (S.D.Ala.1983); *In re Emmer Bros. Co.*, 52 B.R. 385 (Bankr. D.C.Minn.1985). In cases resolved by summary judgment, judgment may be given where there is no genuine dispute as to material facts and the non-moving party is entitled to judgment as a matter of law; thus the proper standard for review is *de novo*. *In re Barsky*, 85 B.R. 550 (Bankr. C.D.Cal.1988) ((citing *In re Center Wholesale, Inc.*, 788 F.2d 541, 542 (9th Cir.1986)). *See also In re Wessels*, 79 B.R. 826 (Bankr. N.D.Iowa 1987).

> B. The Repayment Agreement Between First Software and MECA Whereby First Software's Outstanding Balance was Reduced at a Rate of $100,000 Per Week Constituted the Ordinary Course of Business Between First Software and MECA *Within the Meaning of 11 U.S.C. § 547(c)(2).*

First Software argues that although the Bankruptcy Court correctly determined that the payments were voidable preferences under 11 U.S.C. § 547(b), the Bankruptcy Court was in error when it decided that the payments were made in the ordinary course of business between the parties and could not be avoided, pursuant to § 547(c)(2). Section 547(c)(2) of the Bankruptcy Code provides:

> (c) The Trustee may not avoid under this Section a transfer—
>
> (2) to the extent that such transfer was—
>
> (A) in payment of a debt incurred by the debtor in the ordinary couse of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (C) made according to ordinary business terms.

11 U.S.C. § 547(c).

First Software correctly states that MECA has the burden of establishing each and every element of Section 547(c)(2). *In re Alter–Hall Constr. Co.*, 73 B.R. 989, 992 (Bankr.D.Mass.1987). However, this court concludes that MECA has met its burden.

First Software argues that the courts have interpreted the ordinary course of business exception to § 547 narrowly, and that the repayment arrangement was not the sort of "recurring and customary transaction" contemplated by courts such as the court in *In re WJM*, 65 B.R. 531 (Bankr.D. Mass.) *aff'd* 84 B.R. 268 (Bankr.D.Mass. 1986), *aff'd*, 840 F.2d 996 (1st Cir.1988). However, a reading of the Bankruptcy Court's opinion reveals that the Bankruptcy Court carefully analyzed the transaction at issue using the framework provided by the *WJM* decision. The Bankruptcy Court noted that affidavits revealed that MECA had reached a similar understanding with First Software in the spring and summer of 1985, and paid MECA $50,000 per week until outstanding invoices had been paid. The Bankruptcy Court also noted that in early 1985 and during the summer of 1985, First Software made payments of approximately $80,000 per week to MECA. Accordingly, the Bankruptcy Court concluded that the repayment agreement was in the ordinary course of business of the parties. Moreover, the Bankruptcy Court cited the *In re Economy Milling Co., Inc.* decision, 37 B.R. 914, 972 (Bankr.D.S.C.1983) as authority for the proposition that to satisfy 547(c)(2), the "[t]ransaction need not have been common; it need only be ordinary,"

and that "a transaction can be ordinary and still occur only occasionally."

First Software also argues that under the authority of cases such as *In re Gull Air*, 82 B.R. 1 (Bankr.D.Mass.1988), and *In re Jet Florida Sys., Inc.*, 73 B.R. 552 (Bankr.S.D.Fla.1987), the repayment agreement "was simply not a transfer made in the ordinary course of business." However, after reviewing each of the cases, this court finds First Software's argument to be unpersuasive because neither of the cited cases is factually analagous to the instant case. In *Gull Air*, the court concluded that the challenged transaction was not in the ordinary course of business of the parties. 82 B.R. at 4. However, in *Gull Air*, the challenged payments were made pursuant to a written work out agreement prompted by the commencement of a civil action. *Id.* at 3. In *In re Jet Florida System*, 73 B.R. at 552, as noted by the Bankruptcy Court, the repayment agreement was entered into only after Jet Florida had been expelled from the Airlines Clearing House, an entity that acted as an agent for the airlines in reconciling and settling their debts for defaulting on its clients. Jet Florida was reinstated on the condition that it bring its accounts current and enter into a special arrangement requiring it to pay its debts through the Clearing House earlier than any other airline. *Id.* at 554. In contrast to *Gull Air* and *Jet Florida System*, there is no evidence in this case suggesting MECA knew that First Software was on the verge of bankruptcy when the payments at issue were agreed upon and made.

First Software also argues that because the payments made here were "abnormally large and frequent," they cannot come within the protection of the ordinary course of business defense. As support for this contention, First Software cites the cases of *In re Vunovich*, 74 B.R. 629, 631 (Bankr.D.Kan.1987) and *In re Williams*, 5 B.R. 706 (Bankr.S.D.Ohio 1980). However, after reviewing the two cases, this court concludes that the payments to MECA were not abnormally large and frequent, and that *Vunovich* and *Williams* also differ significantly from the instant case. In the instant case, as noted by the Bankrupt-

cy Court, during early and mid–1985, First Software made payments of approximately $80,000 per week to MECA, and in the spring and summer of 1985 the parties reached an agreement for repayment at $50,000 per week. However, in *Williams*, 5 B.R. at 707, the court found that the challenged payments constituted a voidable preference only after determining that the debtor had made a monthly payment of $344.83 despite the fact that the "debtor's usual rate of payment was $28 per month." Similarly, although the Bankruptcy Court also found a preference in *Vunovich*, 74 B.R. at 631, it did so after concluding that the challenged "payment of $3,181.31 greatly exceeded the ordinary monthly payment of $94.63." Moreover, in *Vunovich*, unlike the situation here, the challenged payment was made by a personal money order rather than the usual business check.

First Software also contends that the payments to MECA were not made in accordance with ordinary business terms within the meaning of § 547(c)(2)(C). However, although First Software states the issue in the "Issues Presented" section of its initial brief, it does not in that brief, or in its supplemental brief, discuss the meaning or requirements of § 547(c)(2)(C).

Additionally, MECA contends that First Software did not raise the § 547(c)(2)(C) issue before the Bankruptcy Court. This position is supported by a reading of the Bankruptcy Court's opinion. As a matter of judicial administration, appellate courts decline to consider matters which have not been passed upon by the lower court. *In re James R. Corbitt Co.*, 62 B.R. 1017, 1021, 1023 (Bankr.E.D.Va.1986) (Citing *Anderson v. City of Albany*, 321 F.2d 649, 658 (5th Cir.1963)). *See also Liakas v. Creditors' Committee of Deja Vu, Inc.*, 780 F.2d 176 (1st Cir.1986) (Where appellant does not raise issue before the Bankruptcy Court, issue will not be considered on appeal). It is appropriate to apply this principle here.

Moreover, even if the § 547(c)(2)(C) issue was properly before this court, a review of the applicable case law and the record indicates that the Bankruptcy Court did not err in holding that the payments to MECA satisfied the requirements of § 547(c)(2)(C).

362

There has been a division of authority on whether the "ordinary business terms" language of § 547(c)(2)(C) refers to terms as between the parties (the majority view) or to terms within the parties' industry (the minority approach.). *In re Steel Imp. Co.,* 79 B.R. 681, 683–84 (Bankr.E.D.Mich.1987). *See also Matter of Xonics Imaging, Inc.,* 837 F.2d 763, 766 (7th Cir.1988); *In re White,* 58 B.R. 266, 270 (Bankr.E.D.Tenn. 1986).

It is not clear which interpretation would be adopted by the Court of Appeals for the First Circuit. However, under either interpretation, MECA has satisfied the requirements of § 547(c)(2)(C). As discussed above, the timing and amount of the challenged payments was consistent with the ordinary course of business between the parties. Moreover, affidavits filed in this case indicate that such repayment agreements were common in the industry, a fact noted by the Bankruptcy Court. Accordingly, even if the § 547(c)(2)(C) issue was properly before this court, it would not lead this court to conclude that the Bankruptcy Court had erred in sustaining MECA's ordinary course of business defense.

In view of the foregoing, the decision of the Bankruptcy Court is hereby AFFIRMED.