**In re Randall Alan ALDRIDGE, Sandra Lee Aldridge, Debtors.**

**Thomas J. CARLSON, trustee, Plaintiff,**

v.

**Ernest L. HUGHES, et al., Defendants.**

**Bankruptcy No. 87–01520–S–KMS.**

**Adv. No. 87–0432–S–1.**

United States Bankruptcy Court, W.D. Missouri, S.D.

Dec. 2, 1988.

Thomas J. Carson, Springfield, Mo., for plaintiff.

Glenn Robinson, Springfield, Mo., for Hughes.

James L. Bowles, Ozark, Mo., for Empire Bank.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

KAREN M. SEE, Bankruptcy Judge.

Pending before the court is the trustee's complaint to avoid as preferential transfers payments made by debtors to one defendant, Empire Bank, that benefitted defendants Ernest and Ella Hughes. The Hughes are grandparents of debtor Randall Aldridge and guarantors under a note from debtors to Empire Bank. Two hearings were held in this matter. At the first hearing, the trustee, Empire Bank and the Hughes appeared through their counsel. At the second hearing, only the trustee and the Hughes appeared. For the reasons that follow, the court concludes that all but one of the payments were preferential and should be avoided.

### FACTS

The facts as stipulated by the parties are as follows. On March 12, 1984, debtors purchased a delivery service known as the Stockton–Osceola Express from Mr. Cy King of Stockton, Missouri. The purchase price was $50,000. To obtain the business,

the debtors borrowed $52,000 from Sac River Bank. The loan was unsecured as to debtors but guaranteed by the Hughes, defendants in this proceeding and paternal grandparents of debtor Randall Aldridge. Defendants secured the loan by assigning 10 certificates of deposit totaling $50,000 to the bank. All but $2,000 of the loan proceeds were paid to Mr. King for the business. The remaining $2,000 was used as operating capital. Debtors began making the monthly payments on April 19, 1984.

The following year on March 8th, debtors refinanced the Sac River Bank loan with a similar loan from Empire Bank at a lower interest rate. The loan from Empire was also guaranteed by the defendants and secured by their certificates of deposit in the amount of $50,000. Debtors began making the monthly payments to Empire Bank in April, 1985 and have continued to make the payments. They have not made any additional payments in excess of those required by the note.

Debtors continue to operate the business and are current in their payments to Empire Bank. They have filed income tax returns for the years 1984, 1985, and 1986 and the payments to Empire Bank are listed in "Schedule C—Profit or (Loss) from Business or Profession" of their income tax returns for those years as a regular business deduction.

The Hughes also stipulated that debtors were insolvent during the year prior to bankruptcy. Additional evidence includes the note signed by debtors and the Hughes in favor of Empire Bank and the repayment schedule under the note detailing the date and amount of each payment on the note over a three year period of time as well as the amount attributed to interest and the amount attributed to principal. Finally, it appears from the pleadings that an order for relief under Chapter 7 on debtors' behalf was entered April 8, 1987.

### CONCLUSIONS

■ Under § 547(b) the trustee has the burden of proving each of the elements of a preferential transfer. 11 U.S.C. § 547(b);

*Brown v. First National Bank of Little Rock,* 748 F.2d 490 (8th Cir.1984). Section 547(b) states that except as provided in § 547(c) the trustee may avoid "any transfer of an interest of the debtor in property" if the transfer is made under the following conditions:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

■ The elements in § 547(b)(1), (3) and (4) are disposed of easily. First, the Hughes do not seriously contend that they were not creditors of debtors at the time the payments on the note were made or that the payments did not benefit them. Even if they made such contentions, it is well established that payment to the primary creditor benefits a guarantor of the debt because it satisfies that portion of the guarantor's contingent liability on the claim. *In re Mercon Industries, Inc.,* 37 B.R. 549, 552 (Bankr.E.D.Pa.1984). *See generally* 4 *Collier's on Bankruptcy* ¶ 547.04 (1988). Second, the parties stipulated that debtors were insolvent the year prior to bankruptcy. Third, the trustee has asserted, and no one has disputed, that transfers in the amount of $6,710.58 were made in the year preceding bankruptcy.

Finally, the Hughes admitted they were grandparents of Randall Aldridge and as such, they are insiders within the purview of 11 U.S.C. § 101(30)(A)(i). The one year reach back period found in § 547(b)(4)(B) will therefore apply. For these reasons, the court finds that the elements of a preference found in § 547(b)(1), (3) and (4) have been met.

The next question is whether the payments were made on account of an antecedent debt.[1] Exhibit A to the trustee's complaint contains a copy of the note signed by the Hughes and debtors. In their answer, the Hughes admitted it was a true and correct copy of the note they signed. The note originally provided, in pertinent part:

> ON DEMAND, and if no demand be made then for value received, I, we, or either of us, promise to pay to the order of EMPIRE BANK Springfield, Missouri Fifty–Two Thousand Six Hundred Ninety–Two and 43/100 DOLLARS with interest from the date hereof, at the rate of Prime ... payable with each installment of principal, payable at its office in monthly installments of $600.00 on the 24th day of April, 1985, and on the same day of each succeeding month until the balance due 3/07/86.

At some unknown point in time the due date was changed from March 7, 1986 to March 7, 1987 and then to March 7, 1988. Additionally, the words "monthly interest first deducted" were interlined.

The note is labeled as an installment note and elsewhere provides that if no demand is made payments of principal and interest will be made on a regular basis until the due date. Thus, the note is an installment note. The one timely payment on this installment note, made May 23, 1986 in the amount of $600, was not a payment on an antecedent debt. Additionally, the payment made March 11, 1987 in the amount of $110.58, was made early and, likewise, was not payment on an antecedent debt.

The Hughes argue that none of the principal is avoidable because it did not mature until March 8, 1988. This argument is without merit in view of the fact that the note is an installment note.

The next question is whether the payments allowed the Hughes to receive more than they would received in a distribution under Chapter 7. "[I]f distribution in bankruptcy to unsecured creditors is less than 100 percent, any payment to an unsecured creditor during the preference period enables that creditor to receive more than he would have received in liquidation had the payment not been made." *In re Kroh Brothers Development Co.*, 86 B.R. 186, 189–190 (Bankr.W.D.Mo.1988) *and cases cited therein.* First, the Hughes received no security from debtors and as guarantors are, therefore, unsecured. Second, no one disputes that distribution in the main case will be less than 100 percent. Accordingly, the court finds that 11 U.S.C. § 547(b)(5) is met.

The Hughes argue that the elements of a preference are not met with respect to an insider-guarantor when there is no evidence to show that the insider-guarantor exerted control over the debtor or diverted debtors' resources to themselves. *See, Mercon Industries* 37 B.R. at 553. *Mercon* discussed policy, but did not purport to incorporate that policy into the elements of § 547(b). All that is necessary to find a preference is that the court find all the elements of § 547(b) have been met. In *Mercon*, the underlying policy supported the court's decision. Here, there has been no evidence to either prove or disprove that the Hughes exerted control over the debtors. The court does note that a slight inference to the effect that payments on the note would not have been made at all during the year preceding bankruptcy had

---

1. The Trustee has raised the Eighth Circuit's decision in *Iowa Premium Service Co., Inc.*, 695 F.2d 1109 (1982). The court has found that all but two payments are preferential and therefore the analysis of whether the interest portion of a payment is preferential is not necessary here. The portion of *Iowa Premium* concerning payment of principal is dicta and the court has elected, under the facts of this case, not to apply that dicta in regard to the two small payments which were found not to be preferential.

the note not been guaranteed by the Hughes can be drawn. This inference is gleaned from the fact that the payments to Empire Bank became later and later in the year preceding bankruptcy. This negative inference aside, however, § 547(b) simply does not allow a court to ignore straightforward statutory language in order to implement an equitable policy. Accordingly, despite the Hughes' objection on equitable grounds, the court finds that all the elements of 11 U.S.C. § 547(b) are met.

■ The Hughes further argue that the payments fall within the "ordinary course of business" exception in 11 U.S.C. § 547(c)(2), which provides that the trustee cannot avoid a transfer to the extent the transfer was

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

The trustee argues that this exception has not been met because the payments to Empire Bank were late and therefore not in the ordinary course of business. The Hughes argue that the payments were made on a debt incurred in the ordinary course of debtors' business and that the payments were made in the ordinary amount. The Hughes bear the burden of proving the nonavoidability of the payments under § 547(c). 11 U.S.C. § 547(g). When proceeding under § 547(c)(2), that burden includes showing that the transfers were ordinary both as between the parties and as is common practice within the industry. *In re Magic Circle Energy Corp.*, 64 B.R. 269, 272[2] (Bankr.W.D.Okla.1986); *Matter of Van Huffel Tube Corp.*, 74 B.R. 579, 588 (Bankr.N.D.Ohio 1987).

■ The repayment record indicates that payments were continually late for two years preceding bankruptcy. The Hughes did not offer any evidence showing that Empire Bank accepted the late payments without sending out late notices or making demand under the note. Nor did the Hughes offer any evidence showing that late payments are generally accepted in the banking industry. A late payment may be considered within the ordinary course of business under certain circumstances. *In re Xonics Imaging, Inc.*, 837 F.2d 763, 765[1] (7th Cir.1988). However, untimely payments are more likely to be considered outside the ordinary course of business. *In re Craig Oil Co.*, 785 F.2d 1563, 1567[5] (11th Cir.1986). Thus, if a late payment is made within a grace period provided for in the contract between the debtor and creditor, the payment is presumptively within the ordinary course of business. *In re Xonics*, 837 F.2d at 766[4]. The note does not allow a grace period.

Here, during the year before bankruptcy, only one payment was made on time. The remaining payments were made between two and 73 days late with the average being 26 days late. During the year preceding that year, from April 24, 1985 to March 24, 1986 the average number of days late was 13, only one payment was timely made and the remaining payments were made between four and 52 days late. Because there is no provision for a grace period for late payments in the note, the Hughes failed to offer evidence that the late payments were within the ordinary course of business between Empire Bank and debtors, and due to the substantial increase in the number of days late the payments preceding bankruptcy were compared with the payments two years preceding bankruptcy, the court finds that none of the late payments were within the ordinary course of business. Accordingly, the only payment made in the ordinary course of business is the one timely payment. The remaining payments, totaling $6,000, will be avoided as preferential transfers.

■ The final question is whether the Hughes, personally, should be responsible for returning the payments to the estate or, as the trustee seeks in his complaint, whether the payments should come from the certificates of deposit assigned to Em-

pire Bank as security for the note. When a transfer is avoided pursuant to § 547 the trustee may recover the value of property transferred from either the initial transferee or any mediate or immediate transferee of the initial transferee. 11 U.S.C. § 550(a).

At least one bankruptcy court has refused to look beyond the immediate transferee even if the result would be inequitable. *See In re Big Three Transportation, Inc.*, 41 B.R. 16, 11 C.B.C.2d 142, 147–148 (Bankr.W.D.Ark.1983). Other courts rely on the following analysis:

> In some circumstances, a literal application of section 550(a) would permit the trustee to recover from a party who is innocent of wrongdoing and deserves protection. In such circumstances the bankruptcy court should use its equitable powers to prevent an inequitable result. For example, if property is transferred to a good faith surety or endorser as consideration incidental to the guarantee of an antecedent debt of a creditor, and the surety subsequently pays the creditor, the property or its value should be recovered from the creditor for whose benefit the transfer was made rather than from the surety or endorser to whom the transfer was made. Likewise, if a transfer is made to a creditor who is not an insider more than 90 days but within one year before bankruptcy and the effect is to prefer an insider-guarantor, recovery should be restricted to the guarantor and the creditor should be protected. Otherwise, a creditor who does not demand a guarantor can be better off than one who does.

4 *Collier's on Bankruptcy* ¶ 550.02 (1988). *See also Matter of R.A. Beck Builder, Inc.*, 34 B.R. 888, 893[6, 7] (Bankr.W.D.Pa. 1983).

Here, there is no evidence that the Hughes made any payments to Empire Bank. Empire Bank, as a secured creditor was not preferred during the 90 day reach back period in § 547(b)(4). Accordingly, the court concludes that the trustee should recover payment from the Hughes

as insider-guarantors and not from Empire Bank a non-insider, non-preferred creditor.

For all the reasons set forth herein, it is therefore ORDERED, ADJUDGED and DECREED:

1. Payments in the amount of $6,000 are hereby avoided as preferential transfers pursuant to 11 U.S.C. § 547(b). Judgment shall be entered in favor of the trustee and against defendant Hughes in the amount of $6,000. Payments in the amount of $710.58 are hereby found not to be preferential transfers within the meaning of 11 U.S.C. § 547(b).

2. The complaint against Empire Bank shall be dismissed.