In re NARRAGANSETT CLOTHING
COMPANY, Debtor.

Joseph B. GARB, as Chapter 11 Trustee
of Narragansett Clothing Company,
Plaintiff,

v.

ATLANDIA IMPORTS, INC., d/b/a
Icelandic Design, Defendant.

Bankruptcy No. 90–10149.
Adv. No. 91–1122.

United States Bankruptcy Court,
D. Rhode Island.

Oct. 28, 1992.

Whitton E. Norris, III, Thomas C. Walsh, John C. Plotkin, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Mass., for plaintiff.

John D. Biafore, Goldman & Biafore, Providence, R.I., for defendant.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on June 24, 1992, on the Trustee's preference complaint against Atlandia Imports, Inc., and on the Trustee's Motion for Entry of Default and/or Sanctions. The substantive issue is whether certain payments to the Defendant supplier were made in the ordinary course of business, and according to ordinary business terms. (Am. Joint Pre-trial Order at 3–4.)

## FACTS

The Narragansett Clothing Company was in the business of retail sales of women's clothing when it filed its voluntary Chapter 11 petition in this Court on February 5, 1992. Prior to the issuance of its first purchase order to Atlandia for shipment of 1989 fall goods, the parties had conducted no business together, and during the course of their business relationship a total of four purchase orders were submitted by the Debtor and filled by Atlandia.

The first purchase order, number 018214, called for 8%/ten days end-of-month plus 6% 30 days.[1] On September 1, 1989, Atlandia filled the purchase order, shipping goods with Invoice No. 3138, in the amount of $20,206.10. This merchandise was received by the Debtor on September 5, 1989, and the invoice listed terms at 14% 60 net 61.[2] The Debtor issued its check no. 110725, dated November 10, 1989, in the amount of $17,491.88 in payment of Invoice No. 3138, but held this check for a period of time before mailing. It was received by Atlandia on December 12, 1989.

On September 12, 1989, by telephone, the Debtor ordered additional goods from Atlandia. On September 27, 1989, the Debtor followed up by sending Purchase Order No. 019224 to Atlandia, confirming the telephone order for additional fall clothing. The terms of this purchase order were the same as its previous one. Atlandia filled this order by shipping goods on September 18, 1989 with Invoice No. 3234 in the amount of $935.88. The goods were received by the Debtor on September 25, 1989, and the invoice listed the same payment terms as its previous invoice.

On October 4, 1989, the Debtor sent a third Purchase Order (No. 019956) to Atlandia for additional goods on the same terms. Atlandia filled that request by shipping the goods on October 5, 1989, accompanied by Invoice No. 3459 (same terms) in the amount of $11,741.74. These goods were received on October 12, 1989. Check No. 1107906 was issued on December 10, 1989, in the amount of $10,880.19 in payment of Invoice Nos. 3234 and 3459. Atlandia received the check on January 2, 1990.

A fourth purchase order was submitted by the Debtor on November 3, 1989, and filled by Atlandia on November 6, 1989. Atlandia's Invoice No. 3847 in the amount of $4,541.13 accompanied the goods. This invoice was never paid by the Debtor and it has been stipulated that Atlandia has a valid proof of claim against the estate in the amount of $4,541.13.

Atlandia concedes that the two payments made by the Debtor were preferences under 11 U.S.C. § 547(b). However, it argues that the "ordinary course" exception of

---

1. We understand these terms to provide for payment to be due 30 days from the tenth of the month following the Debtor's receipt of the goods, with goods received on or after the 25th of any month considered to be received as of the first of the following month. The Debtor was to receive a trade discount of 8% of the listed invoice price, plus 6% of the balance after the 8% discount.

2. These terms call for payment to be due on the 61st day after shipment of the goods, with a 14% discount for payments made on or before the 60th day after shipment of the goods.

§ 547(c)(2) is applicable, preventing avoidance of the two payments in question.

## DISCUSSION

Section 547(c)(2) provides that the trustee may not avoid a transfer to the extent that such transfer was

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

■ It is undisputed that the *debt in question* was incurred in the ordinary course of business of Atlandia and Narragansett. The only remaining issues therefore are: (1) whether the *payments* were made in the ordinary course of business *of the Debtor and Atlandia,* and (2) whether those payments were made according to ordinary business terms. Atlandia bears the burden of proving non-avoidability under this subsection,[3] and must do so by a preponderance of the evidence. *Logan v. Basic Distribution Corp. (In re Fred Hawes Org., Inc.),* 957 F.2d 239, 242 (6th Cir.1992) (citing *In re Circleville Distrib. Co.,* 84 B.R. 502, 505 (Bankr.S.D.Ohio 1988)). Failure to prove any one of the necessary elements is fatal to the transferee's defense. *WJM, Inc. v. Massachusetts Dept. of Pub. Welfare,* 840 F.2d 996, 1010–11 (1st Cir.1988); *In re Miner Indus., Inc.,* 119 B.R. 6, 9 (Bankr.D.R.I.1990). Atlandia must show *subjectively* that the payment of the debt was ordinary in relation to its business dealings with the Debtor. Furthermore, Atlandia must show *objectively* that the payment of the debt was ordinary in relation to the custom of debt payment in the industry. *In re Fred Hawes,* 957 F.2d at 244.

■ The Trustee argues that by making payments late according to either the purchase order or invoice terms, and by holding checks for a period of time after they are written, the Debtor made payments outside the ordinary course of business. He attempted to show through the testimony of Charles Hahn, Narragansett's chief financial officer from 1982–90, that Narragansett had always paid its bills on time prior to the "cash flow" problems in November 1989, and which eventually resulted in this bankruptcy filing. However, Hahn's testimony revealed that the Debtor did not always make timely payments, as alleged by the Trustee. Instead, Hahn testified that the Debtor *always* took the discount, even when it paid after the discount period, and that Narragansett similarly made late payments to other suppliers.

Atlandia presented the testimony of its president, Andrew Fitts, who testified that in the retail clothing trade ordinary business terms include regular discounts. Normally, he stated, suppliers are not paid until the purchaser has sufficient funds on hand to do so—typically 30 to 90 days *past* the discount date. Cash availability in the retail trade fluctuates seasonally, and suppliers understand that payment may be delayed due to cash flow problems. Fitts also stated that Atlandia did not once demand payment from Narragansett, because such payment delays were expected and tolerated in the business.

■ Based upon the evidence before us, we find that Atlandia has proved by a preponderance of the evidence that the payments in question were made in the ordinary course. Although there was no contractual modification of the payment terms between Atlandia and Narragansett, we find that it was in the ordinary course of business for Narragansett to make payments late, beyond the discount periods, and that it was in the ordinary course of its business for Atlandia to accept such late payments, satisfying § 547(c)2(B). Late payments can be considered ordinary by demonstrating that the making and accepting of late payments were normal in the course of business between the parties. *In re Yurika Foods Corp.,* 888 F.2d 42, 45 (6th Cir.1989). In deciding whether the

---

**3.** *See* 11 U.S.C. § 547(g).

transfer was ordinary as between Narragansett and Atlandia, the Court may consider similar transactions between the parties and other entities. *See In re Craig Oil Co.*, 785 F.2d 1563, 1566–67 (11th Cir.1986); *In Re Energy Coop., Inc.*, 103 B.R. 171, 176 (N.D.Ill.1986).

■ The testimony of Charles Hahn established that Narragansett was not in the habit of paying its creditors on time. His testimony further showed that it was the industry-wide custom for retailers to pay suppliers late, beyond the discount periods, and to still retain the discount. The testimony of Andrew Fitts further corroborated that late payments were customary in the industry. The fact that Atlandia did not ask Narragansett for payment after the due date, and its continued willingness to ship additional goods, satisfies us that late payments were standard practice and accepted in the industry. In addition, the Trustee has effectively conceded that late payments and their acceptance is within industry custom, by failing to adequately address the issue either at trial or in his post trial memorandum. In light of the foregoing, we find that Atlandia has satisfied the requirements of § 547(c)2(C).

Accordingly, we conclude that Atlandia has met its burden of proof in establishing the "ordinary course" defense under 11 U.S.C. § 547(c)(2), and that the two payments made by Narragansett to Atlandia within the preference period are not avoidable by the Trustee, because they are transfers made in the ordinary course of business.

■ The Debtor's Motion for Entry of Default and/or Sanctions focuses on Atlandia's failure to comply timely with our Local Rule requiring participation in the preparation of a Joint Pre Trial Order, and for its denial of facts not truly in dispute. The Trustee's motion for sanctions is not frivolous, and while we do not believe Defendant's conduct was exemplary either, its actions were not so egregious to warrant sanctions. This conclusion is fair in light of the response by Atlandia that: (1) a joint pre-trial order was executed but misdelivered by the postal service; and (2) the trial was delayed due to the death of a witness' family member, and the fact that an amended joint pre-trial order was filed prior to trial.

Accordingly, the Trustee's motion for sanctions is DENIED, and the motion for entry of default is DENIED as moot.

Enter Judgment consistent with this opinion.