In re KIDDY TOYS, INC., Debtor.

Diego FERRER, Trustee, Plaintiff,

v.

PRUSA DISTRIBUTING CORP., Defendant.

Bankruptcy No. B–91–02014 (ESL). Adv. No. 92–0080.

United States Bankruptcy Court, D. Puerto Rico.

Aug. 17, 1994.

929

Antonio Betancourt, Richard A. Lee Law Office, San Juan, PR, for plaintiff Diego Ferrer.

Isabel M. Fullana, García–Arregui & Fullana, Santurce, PR, for defendant PRUSA Distributing Inc.

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

Before the Court is a Motion for Summary Judgment (docket No. 8) [1] filed by the trustee of debtor Kiddy Toys, Inc. (Kiddy) on October 1, 1992 against defendant PRUSA Distributing Corp. (PRUSA) pursuant to 11 U.S.C. § 547. Defendant filed its Opposition and Request for Summary Judgment (docket No. 17) on February 3, 1993 to which plaintiff filed its Reply (docket No. 18) on February 19, 1993.

This adversary proceeding is a preference action whereby the trustee seeks to avoid a transfer of the debtor's estate to defendant, a toy supplier, which occurred during the 90 day period prior to the filing of Chapter 7 petition pursuant to his authority under

---

1. *Also, see* Plaintiff's Memorandum, docket No. 9, filed on October 1, 1992.

§ 547(b). The creditor asserts that the transfers occurred during the ordinary course of business between the parties as defined by § 547(c)(2) or, in the alternative, the transfers constituted contemporaneous exchange for new value pursuant to § 547(c)(1).

## I. SUMMARY JUDGMENT STANDARD

Bankruptcy Rule 7056 makes Rule 56 of the Fed.R.Civ.P. applicable to adversary proceedings. Accordingly, the summary judgment standard utilized in bankruptcy matters mirrors the standard set forth in the federal rules of civil procedure and as developed by case law.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party establishes the elements essential to its case and upon which it carries the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In addition, the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). When considering a petition for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). *See also López v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1516 (1st Cir.1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden at trial. *Bias v. Advantage International, Inc.*, 905 F.2d 1558, 1560–61 (D.C.Cir.), *cert. denied*, 498 U.S. 958, 111 S.Ct. 387, 112 L.Ed.2d 397 (1990). Therefore, the moving party cannot prevail if any essential element of its claim or defense requires trial. *López*, 938 F.2d at 1516. The moving party is also required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54. *See also Prokey v. Watkins*, 942 F.2d 67, 72 (1st Cir.1991); *Daury*, 842 F.2d at 11.

Once the moving party has met its burden, the burden switches to the nonmoving party who must show that a genuine issue of material fact exists requiring deference to the fact finder. The nonmoving party may not merely demonstrate the existence of some factual dispute to defeat a motion for summary judgment. *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798, 804 (1st Cir.1987). *See also Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169, 1172 (1st Cir.1988); *Hahn*, 523 F.2d at 464. To meet its burden, the nonmoving party is required to present evidentiary support for every essential element of its case and upon which it bears the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3rd Cir.1990). The failure of the nonmoving party to present proof for each element of its case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. In other words, there is no issue for trial unless there is sufficient evidence presented by the nonmoving party which could support a verdict in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

The respondent may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could reasonably support a verdict for the nonmoving party. *Over the Road Drivers, Inc. v. Transport Insurance Co.*, 637 F.2d

816, 818 (1st Cir.1980). Although it is not the function of the trial judge to weigh the evidence or determine its credibility, where the evidence is merely colorable or not sufficiently probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## II. PREFERENCE ACTIONS
## 11 U.S.C. § 547(b)

Section 547 of the Bankruptcy Code governs the avoidance of preference transfers and identifies the exceptions thereto. The Supreme Court articulated the purpose of § 547 to be twofold: (1) to provide protection to the debtor's assets by discouraging creditors from running to the courthouse to force collection as the debtor slides into bankruptcy and (2) to insure that the policy behind the Code requiring that all creditors be treated fairly and equally, is not violated as a result thereby. *Union Bank v. Wolas,* 502 U.S. 151, 160–62, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991).

The burdens of the respective parties acting under this section are clearly set forth in the statute. Section 547(g) states that the trustee has the burden of establishing that the transfer meets all requirements for avoidance as indicated in subsection (b). Likewise, the creditor has the burden to show that it is entitled to any defense asserted under subsection (c).

The Bankruptcy Code, 11 U.S.C. § 547(b), requires that five elements be established by the trustee in a preference action. The statute reads, in pertinent part:

Except as otherwise provided ..., the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

It is undisputed that the defendant is a creditor and that payments were made to its benefit. The challenged transfers, in the form of checks, were directly applied to Kiddy's outstanding debt by the creditor. In addition, the undisputed facts show that all debts to which these transfers were applied, were antecedent. Kiddy incurred these debts throughout 1990 when purchasing goods to sell to consumers during the 1990 holiday season. Furthermore, according to the plain language of § 547(f), a presumption exists as to debtor's insolvency during the 90 day period preceding the filing of a bankruptcy petition. *WJM, Inc. v. Massachusetts Department of Public Welfare,* 840 F.2d 996, 1010 (1st Cir.1988). Defendant has not submitted evidence to the contrary, therefore, the presumption of insolvency remains.

The transactions in question all occurred during the 90 day period prior to Kiddy's filing of its bankruptcy petition on March 15, 1991. The facts show that all challenged transfers were made from January 11, 1991 through March 15, 1991.[2]

Finally, the trustee asserts that the transfers have resulted in the creditor receiving more than it would have under the provisions of Chapter 7. To establish this, the trustee relies upon the debtor's schedules as well as an audit for the year ending June 30, 1990. A review of debtor's schedules filed in this case reveal that there will not be 100% distribution to all unsecured creditors. *In re Continental Country Club, Inc.,* 108 B.R. 327, 332 (Bankr.M.D.Fla.1989) (where plaintiff's

---

**2.** *See* footnote 3, *infra.*

schedules and filed claims show that it will be unable to pay 100% distribution to creditors, any unsecured creditor who received payment during the preference period received more than it would have under Chapter 7); *In re Aldridge,* 94 B.R. 589, 592 (Bankr. W.D.Mo.1988) (same).

·While it appears that the trustee has, without a doubt, met his burden by establishing that all the questioned transactions are potential preferential transfers of the debtor's property in that each meets the criteria under subsection (b), the analysis is not complete. Defendant has asserted that the challenged transfers fall within one of two exceptions which, if established, will render these transactions nonavoidable. Section 547(c) lists several exceptions to the trustee's avoidance powers.

### III. ORDINARY COURSE OF BUSINESS 11 U.S.C. § 547(c)(2)

■ The defendant contends that the transactions which occurred between it and Kiddy were in the ordinary course of business, and, therefore, are exempt from avoidance. Three separate factors must be established in order to successfully utilize this defense; these are contained in § 547(c)(2):

The trustee may not avoid under this section a transfer—

(1) ...

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms; ...

■ The initial requirement is easily satisfied and not often litigated. The defendant need only show that the transfers were between unrelated parties and for general business purposes. *In re Tax Reduction Institute,* 148 B.R. 63, 72 (Bkrtcy.D.Dist.Col. 1992).

No objection having been raised, it appears that the parties are in agreement that all the transfers in question were credited toward outstanding debts as a result of ordinary business transactions between Kiddy and the defendant. The facts substantiate the conclusion that these payments were applied against an antecedent debt resulting from a business relationship whereby Kiddy purchased toys from the defendant.

■ The second and third step require a more rigorous analysis and involve a subjective as well as an objective test as articulated by the First Circuit in *WJM, Inc. v. Massachusetts Department of Public Welfare,* 840 F.2d 996 (1st Cir.1988). Accordingly, a defendant is required to submit evidence showing that the payment was made within the ordinary terms of its business dealings with the debtor and that the transfer was made in a manner consistent with debt payment in the industry. *WJM,* 840 F.2d at 1010–11. This test is also followed by the Third and Sixth Circuits. *In re Fred Hawes Organization, Inc.,* 957 F.2d 239, 244 (6th Cir.1992); *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.,* 891 F.2d 66, 70 (3rd Cir.1989); *but see Lovett v. St. Johnsbury Trucking,* 931 F.2d 494, 499 (8th Cir.1991) (both § 547(c)(2)(B) & (C) are satisfied as long as the late payments were consistent with the course of dealings between the parties), followed in *In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.,* 151 B.R. 492, 498–500 (W.D.Ark.1993).

■ The Court must engage in a fact-specific analysis to determine whether the transfer was made according to the ordinary business terms of the parties. *In re Fulghum Construction Corp.,* 872 F.2d 739, 743 (6th Cir.1989). Factors to be considered include the times, amount and manner of payment as well as the circumstances under which the transfer was made. *In re Yurika Foods Corp.,* 888 F.2d 42, 45 (6th Cir.1989).

■ Even though the business transactions of the debtor are "irregular", they are considered "ordinary" within § 547(c)(2) if consistent with the course of dealings between the parties. *Fulghum,* 872 F.2d at 743. The defendant need only demonstrate that this transaction is consistent with other

business transactions between the debtor and the creditor. *WJM*, 840 F.2d at 1011.

■ Payments made within the time allotted by the contract provisions between the debtor and creditor best exemplifies normal business relations. However, although late payments are presumptively "nonordinary", lateness is not sufficient in itself to take the payment outside the normal course of business exception. *Fred Hawes*, 957 F.2d at 244. Contract terms should not be viewed as exclusively indicative of the ordinary course of business between debtor and creditor; the parties' conduct may show that extra-contractual practices were adopted by the parties as normal practice. *In re Xonics Imaging Inc.*, 837 F.2d 763, 767 (7th Cir.1988). Accordingly, where evidence substantiates that the making and accepting of late payments was the normal practice between the parties, even though such practice deviates from strict written contract terms between debtor and creditor, the party has met the prerequisites of § 547(c)(2)(B). *Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029, 1032 (7th Cir.1993); *Yurika*, 888 F.2d at 45; *In re Powerine Oil Co.*, 126 B.R. 790, 795 (9th Cir. BAP 1991).

■ However, in the event that a creditor resorts to unusual debt collection methods as a result of lateness, payments made in response are not within the ordinary course of business. *In re Braniff, Inc.*, 154 B.R. 773, 781–82 (Bkrtcy.M.D.Fla.1993). Collection actions which include sending dunning letters or threatening to discontinue the business relationship with the debtor constitute evidence that the creditor does not agree to adopt any extra-contractual terms. *See, e.g., In re A.J. Lane & Co., Inc., Lane Homes, Inc., Lane Management, Inc., Indian Hill Associates, Inc.; Miller (Stanley) Trustee v. Perini Corporation*, 164 B.R. 409, 414–15 (Bankr.D.Mass.1994) and the cases cited therein.

■ To meet the third requirement of the defense, the defendant must submit evidence supporting that similar transactions occur between it and other entities. *In re Narragansett Clothing Co.*, 146 B.R. 609, 612 (Bankr.D.R.I.1992); *In re Craig Oil Co.,* 785

F.2d 1563, 1566–67 (11th Cir.1986); *In Re Energy Co-op., Inc.*, 103 B.R. 171, 176 (N.D.Ill.1986). The issue is whether the particular transaction comports with industry-wide business practices. *Fred Hawes*, 957 F.2d at 246; *Yurika*, 888 F.2d at 45. This objective test is only satisfied by presentation of separate evidence as to the industry practice and cannot be inferred from evidence evincing the practices between the debtor and the creditor. *Tax Reduction*, 148 B.R. at 75.

Recently, the objective test required under § 547(b)(2)(C) has been reevaluated and redefined by several Circuit Courts. The Seventh Circuit has held that the difficulty in establishing the existence of a uniform set of business terms and identifying the industry whose norm will govern as well as the broad range of business practices in any given industry hampers the strict application of an objective test comparing the practices of the parties to those of the industry. *Tolona Pizza*, 3 F.3d at 1033. Therefore, it concludes, the test should be whether the business practices between parties fall within a *range* of practices utilized by other creditors who are in some general way similar to the creditor; "only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C." *Id.*, citations omitted.

■ The Third Circuit in *In re Molded Acoustical Products, Inc.; Fiber Lite Corporation v. Molded Acoustical Products, Inc.*, 18 F.3d 217 (3rd Cir.1994), fine tuned the analysis by recognizing the interaction between subsections B and C resulting in a less cumbersome standard which is consistent with the purpose of the statute. Specifically, the Court reasoned, the longer the pre-insolvency relationship between the debtor and creditor, the more the creditor will be allowed to vary its credit terms from the industry norm. This is based on the conclusion that where an established business relationship is maintained between the parties for a considerable length of time prior to insolvency, there exists less likelihood that the transfer was the result of overreaching by a creditor to the disadvantage of all other creditors.

Conversely, where the business relationship between the creditor and debtor is of recent origin, the credit terms under which the transfer was accomplished would require a rigorous comparison to the credit terms allowed in the relevant industry.

Although not yet addressed by the First Circuit, the results derived from application of the Third Circuit standard is not inconsistent with the test articulated in *WJM*. Rather, a new dimension is added which further facilitates the goals of a preference action. In light of these conclusions, this Court hereby adopts the application of the analysis in *Molded Acoustical Products* to the test required by the First Circuit in *WJM*.

In the action before the Court, the trustee requests summary judgment finding that payments in the amount of forty-two thousand, five hundred and fifty-seven dollars and twenty-four cents ($42,557.24)[3] are preferential transfers. The trustee alleges that the transfers were not in the ordinary course of business because the timing of the payments did not conform with the written contract terms between the parties, i.e. payments were made subsequent to the "net 30 days". *See* Trustee's Motion ..., docket No. 9, exhibit C, pp. 1–4 ¶¶ 2 & 5 of Answer to Interrogatories & Defendant's Reply ..., docket No. 17, exhibit 2.[4]

Although not fully substantiated by the evidence, PRUSA alleges that during its business relationship with Kiddy for the last six years, late payment was customarily made and accepted.[5] In addition, defendant points out that its willingness to continue to ship goods to its customers even though an outstanding balance existed indicates that late payment is a standard practice with Kiddy.

Defendant also states that payments which were late and, therefore, contrary to the contract terms, were regularly received and accepted from other stores with which it conducted business. PRUSA contends that such practice is common throughout the toy industry where, due to the fact that 75% of the toys sales are generated during the holiday season, credit is extended throughout the year and payment is made after the holiday season. In support thereof, defendant submits a listing of account information from eight other entities. *See* Defendant's Reply . : ., docket No. 17, exhibit 2.

On the other hand, the trustee alleges that defendant's contentions are not supported and, in some cases, contradicted by the evidence. Specifically, the trustee alleges that the second sworn statement of Mr. Paonessa, PRUSA's treasurer, was intentionally vague. The trustee contends that the interrogatories indicated that payment was due on December 10, January 10 or January 15, depending upon the delivery date while Mr. Paonessa's statement seemed to infer the blanket policy that payments for all purchases were due in December, January and February.

In addition, the trustee alleges that defendant mischaracterizes the testimony of Mr. Suárez, Kiddy's former general manager, when alleging that it was ordinary practice of Kiddy to take up to 120 days to pay invoices. Rather, the trustee states, Mr. Suárez testified that business terms between debtor and other vendors varied according to Kiddy's history of payment.

The parties have shown that issues of material fact exist to warrant deference to the finder of fact to determine whether the challenged transfers were made in the ordinary course of business. Accordingly, in light of the foregoing, the trustee's motion for summary judgment must be denied because the defendant has presented facts that may establish the ordinary course of business defense. On the other hand, defendant's mo-

---

3. The amounts and the dates of each transaction are not in dispute; these are as follows:

| | |
|---|---|
| 01/11/91 | $ 4,557.24 |
| 01/31/91 | $25,000.00 |
| 03/05/91 | $ 4,000.00 |
| 03/12/91 | $ 5,000.00 |
| 03/15/91 | $ 4,000.00 |
| TOTAL | $42,557.24 |

4. Defendant's exhibit No. 2 also indicates that in some instances, payment was due in "net 60 days" and "net 45 days", however, the majority of the invoices were set at "net 30 days".

5. The evidence submitted only reflects the relationship between Kiddy and Prusa for the years 1988 and 1990. *See* Defendant's Reply ..., docket No. 17, exhibit 2.

tion for summary judgment must be denied because there are material issues of fact in controversy.

### IV. CONTEMPORANEOUS EXCHANGE 11 U.S.C. § 547(c)(1)

In the alternative, PRUSA alleges that a portion of the transfer was a contemporaneous exchange of new value and, therefore, nonavoidable.[6] Defendant allegations are based solely on the fact that PRUSA provided goods to Kiddy in the amount of $22,949.54 (twenty-two thousand, nine hundred and forty-nine dollars and fifty-four cents) within the 90 day period preceding bankruptcy filing.

Bankruptcy Code, 11 U.S.C. § 547(c)(1) states the following:

The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange.

Three elements must be established for defendant to successfully assert this defense. All are questions of fact. *In re Spada,* 903 F.2d 971, 975 (3rd Cir.1990).

The first and most critical inquiry focuses on the intention of the parties. There must be some manifest desire by the parties that the exchange contemporaneously grant money or money's worth in new credit, goods, services, or property to the debtor. *Matter of Prescott,* 805 F.2d 719, 727 (7th Cir.1986). The course of dealings between the parties as well as agreements between the parties have been considered viable evidence by courts to establish contemporaneous intent. *In re Schmidt,* 26 B.R. 89, 91 (Bankr.D.Minn.1982) (where there was a history between debtor and creditor bank whereby the bank covered any overdrafts on

debtor's account until such time that the debtor made a deposit, the extension of credit and deposits were intended to be contemporaneous); *In re Advance Glove Mfg. Co.,* 42 B.R. 489, 493 (Bankr.E.D.Mich.1984) (where the debtor had accrued an outstanding balance and further shipment of goods was predicated on a new agreement between the parties whereby the creditor would only ship future goods where payment for that shipment was made in full, contemporaneous intent of the parties was clearly established).

Secondly, defendant must show that the transfer was, in fact, substantially contemporaneous. *In re Lewellyn & Co., Inc.,* 929 F.2d 424, 428–29 (8th Cir.1991) (section 547(c)(1) applies whether new value is given before or after the debtor's transfer as long as the exchange was shown to have been substantially contemporaneous). Courts have looked to the agreement of the parties to determine whether the exchange meets this requirement. *In re Fasano/Harriss Pie Co.,* 43 B.R. 871, 877 (Bankr.W.D.Mich.1984), *aff'd,* 71 B.R. 287 (W.D.Mich.1987) (where the parties agreed that the delivery of goods would not occur until payment was received, the exchange was substantially contemporaneous even where a 14 day gap existed between the delivery and actual payment).

Finally, the defendant must establish the specific measure of new value given to the debtor. The plain language of § 547(c)(1) requires that the party seeking this defense must prove the exact amount of new value; the fact that some new value was given to the debtor does not satisfy this requirement. *In re Jet Florida Systems, Inc.,* 861 F.2d 1555, 1558–59 (11th Cir.1988).

"New value" is defined in § 547(a)(2) as:

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including

---

6. In its discussion of this affirmative defense, defendant inexplicably includes a quote concerning the exception of transfer for new value as defined by § 547(c)(4). *See* Defendant's Reply ..., docket No. 17, ¶ 26. Without more, the Court can only conclude that its inclusion is a mistake and, therefore, further consideration is not necessary.

proceeds of such property, but does not include an obligation substituted for an existing obligation.

While it is clear that the substitution of one obligation for an existing obligation does not constitute new value, modification of the terms of an existing obligation may constitute the creation of new value. *Spada,* 903 F.2d at 976. *See also In re F & S Cent. Mfg. Corp.,* 53 B.R. 842, 850 (Bankr.E.D.N.Y.1985) (if the creditor can demonstrate that its agreement to modify terms of the debtor's obligation gave the debtor money or money's worth in new credit or goods, there is no reason to avoid the transfer).

Defendant's defense that there was a contemporaneous exchange for new value is not sustainable. PRUSA has failed to assert facts which satisfy the elements of this affirmative defense.[7] Consistent with the discussion above, the fact that toys were delivered after Christmas but within the 90 days prior to Kiddy's filing of bankruptcy does not automatically result in a finding that this transaction constitutes a contemporaneous exchange.

Defendant has failed to provide facts which evidence the intention of the parties as consistent with the mandates of Subsection A. In fact, defendant's own evidence indicates that the exact opposite is true. Its answers to interrogatories show that toys were purchased on an open credit line and each payment made was applied to the outstanding balance against the earliest invoice. This practice never varied. Without a doubt, the payments made by debtor were intended to be made on account of an antecedent debt rather than a contemporaneous exchange for new value.[8] *See, e.g., In re Ajayem Lumber Corp.,* 143 B.R. 347, 352 (Bkrtcy.S.D.N.Y. 1992) & *In re Balducci Oil Co., Inc.,* 33 B.R. 843, 846 (Bkrtcy.D.Colo.1983).

Given the complete dearth of evidence supporting this claim and the existence of facts in the record which are dispositive on the matter, the Court finds the transactions in question are not excepted from being avoided under § 547(c)(1). In conclusion, the trustee's motion for summary judgment against PRUSA is granted insofar that contemporaneous exchange is not legally sustainable and, therefore, not a valid defense in these proceedings.

## V. CONCLUSION

Accordingly, the motion for summary judgment filed by the trustee for Kiddy Toys, Inc. against defendant PRUSA Distributing Corp. is hereby denied as to the defense asserted by PRUSA Distributing Corp. under § 547(c)(2).

It is further ORDERED that defendant PRUSA Distributing Corp.'s motion for summary judgment against Kiddy Toys, Inc. is hereby denied as to the defense asserted by defendant under § 547(c)(2).

It is further ORDERED that defendant not be allowed to assert an affirmative defense pursuant to § 547(c)(1) and the trustee for Kiddy Toys, Inc. motion for summary judgment against PRUSA Distributing Corp. is granted insofar as it pertains to this defense.

It is further ORDERED that a status conference be and is hereby scheduled for *November 15, 1994 at 9:00 a.m.*

The Clerk of the Bankruptcy Court shall issue a partial judgment upon receipt of this order.

SO ORDERED.

---

7. In fact, defendant's brief fails to discuss this assertion. *See* Defendant's Reply ..., Docket No. 17, ¶¶ 23–25.

8. The Court need not take the time to discuss the remaining elements for proper pleading of this affirmative defense; defendant offers no evidence and/or discussion. However, it should be noted for the record that the trustee alleges that because Prusa admits that no new value or merchandise was given after December 31, 1990, payments made in January and March, 1991 are not contemporaneous within the meaning of the statute.