In re The GANGARAMS, INC. d/b/a Consolidated Auto Screen, Debtor.

The GANGARAMS, INC. d/b/a Consolidated Auto Screen, Plaintiff,

v.

QUALITY TECHNICAL SERVICE CO., Defendant.

Bankruptcy No. 96–10203.
Adversary No. 96-1178.

United States Bankruptcy Court, D. Rhode Island.

March 13, 1998.

Robert Smith, Providence, RI, for Defendant.

Michael McGahan, Attleboro, MA, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW [1]

ARTHUR N. VOTOLATO, Bankruptcy Judge.

### Travel and Background

On January 5, 1996, The Gangarams, Inc., d/b/a Consolidated Auto Screen ("Gangarams") filed a petition in the United States Bankruptcy Court for the Southern District of New York under Chapter 11 of the Bankruptcy Code.

On January 12, 1996, the case was transferred to this Court and Gangarams' Plan of Reorganization was confirmed on February 27, 1997.

This adversary proceeding was commenced pursuant to 11 U.S.C. § 547(b), alleging that certain payments received by Defendant Quality Technical Services Co. ("Quality") constituted preferences under that section of the Code. It is agreed that during the preference period, after crediting Quality for all payments which constitute new value under 11 U.S.C. § 547(c)(4), Gangarams has established all of the elements of a preference contained in 11 U.S.C. § 547(b) for payments in the amount of $50,670.71. At issue is whether payments totaling $50,670.71 were made in the ordinary course of business pursuant to 11 U.S.C. § 547(c)(2), and not subject to avoidance.

### Findings of Fact

The business relationship between the current owners of Gangarams and Quality began in December 1993. It was the practice of Gangarams to order goods from Quality, and Quality would ship to Gangarams without

Andrew Richardson, Providence, RI, for Plaintiff.

1. On November 21, 1997, after hearing on the Trustee's Complaint, we adopted as our findings of fact and conclusions of law, those presented on the record by the Trustee on November 13, 1997. The Defendant requested additional findings and conclusions and at the request of the Court, the Plaintiff submitted written proposed findings of fact and conclusion of law. The Defendant has objected to the Plaintiff's submission, arguing that it is improper for the Court to solicit proposed findings and conclusions from a party, citing *In re Las Colinas, Inc.*, 426 F.2d 1005 (1st Cir.1970). We have read *Las Colinas* and find that it is not applicable here as the within order is not the verbatim adoption of the Plaintiff's proposed findings or conclusions.

any preconditions for payment. The terms of Quality's invoices were net 30 days. During the period December 1990 through August 1994, Gangarams typically paid Quality's invoices within 30 to 60 days. During the period August 1994 through March 1995, Gangarams' made monthly payments to Quality ranging from 70 to 110 days from the date of the invoice. See Defendant's Ex. C. No payments were made from March 2, 1995 until June 28, 1995, although Quality continued to ship goods to the Plaintiff. See Ex. C. On June 28, 1995, Gangarams paid invoices that were from 134 to 155 days old. On June 30, 1995, Gangarams made a payment to Quality on invoices ranging from 121 to 128 days old. The next payment received by Quality was on August 4, 1995, for invoices that were 151 and 155 days old, respectively. See Defendant's Ex. C.

In August 1995, Quality unilaterally required that Gangarams pay 150% of the amount of any new orders, and that payments henceforth would be credited towards the oldest invoices. While certain of Gangarams' other creditors had required that Gangarams pay as much as 120% towards old invoices, none had required 150%. The first payment received by Quality under the new arrangement was on August 23, 1995, 43 days prior to the beginning of the preference period, which started on October 5, 1995.

According to Quality, the implementation of the 150% requirement was consistent with its "policy" regarding its other customers whose invoices exceeded 90 days, but conceded that it had implemented this policy on only one other occasion in the last 7 years, and that it had not instituted this policy against Gangarams when it previously was in arrears in excess of 90 days. Quality acknowledges that it implemented the policy on account of its concern over Gangarams' financial condition and, more particularly, because of the increasing amount of arrearages and the increasing delays in payments. The payments made by Gangarams to Quality during the preference period were all made pursuant to Quality's 150% payment requirement.

### Conclusions of Law and Discussion

■ The sole legal issue presented is whether the payments received by Quality during the 90 day period prior to the filing of the Chapter 11 petition constitute payments in the ordinary course of business under 11 U.S.C. § 547(c)(2). That section provides an affirmative defense to preference actions for creditors who are able to show that:

(A) The debt was incurred in the ordinary course of business between the parties;

(B) The payments were made in the ordinary course of business between the parties; and

(C) The payments were made according to ordinary business terms.

The parties agree that the debt was incurred in the ordinary course of business, but disagree as to the remaining two elements.

■ The Defendant has the burden of establishing the non-avoidability of the payments, and it must establish each of the three elements contained in § 547(c)(2), by a preponderance of the evidence. *WJM Inc. v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996, 1011 (1st Cir.1988); 11 U.S.C. § 547(g). The purpose of the ordinary course of business defense is "the protection of recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *Id.* at 1011.

■ In considering whether a payment was in the ordinary course of business between the parties, the creditor must demonstrate some consistency vis-a-vis prior business transactions between them. *WJM Inc.*, 840 F.2d at 1011. Courts have considered "several factors that bear upon whether a particular transfer warrants protection under section 547(c)(2). These factors include the amount transferred, the timing of the payment, the historic course of dealings between the debtor and the transferee, and the circumstances under which the transfer was effected." *Healthco Int'l, Inc. v. Repco Printers & Lithographics, Inc. (In re Healthco)*, 132 F.3d 104, 109 (1st Cir.1997). In the instant case, the parties' course of dealing between December 1993 and August 1995 was for Gangarams to order goods and

for Quality to ship on open account. That prior course of dealing was unilaterally terminated in August 1995, when Quality imposed the 150% payment requirement. The new payment plan represented a radical departure from the prior business dealings between the parties, and Quality readily admits that the implementation of the policy of payment of 150% of new orders was prompted by its concern regarding Gangarams' financial condition, evidenced by the increasing arrearages, as well as the growing delay between shipments and payments.

 The thrust of Quality's defense is that the payments received from Gangarams during the preference period were made pursuant to a "policy" implemented by Quality regarding accounts over 90 days in arrears, and that the policy was implemented prior to the preference period. In determining whether payments are ordinary in relation to past practices, the following factors are to be considered:

1. The length of time the parties were engaged in the transactions at issue;

2. Whether the amount or form of tender differed from past practices;

3. Whether the debtor or creditor engaged in any unusual collection or payment activity; and

4. Whether the creditor took advantage of the debtor's deteriorating financial condition.

*In re Grand Chevrolet, Inc.,* 25 F.3d 728, 732 (9th Cir.1994). Here, the course of business imposed by Quality in August 1995 differed substantially from the parties' prior arrangements, i.e., whereas Quality had always shipped goods to Gangarams without any preconditions, as of August 1995 Quality required Gangarams to pay 150% of the new orders prior to delivery.

In addition, according to its own general business practices, Quality clearly engaged in unusual collection activity in this case. Quality admitted that it implemented this policy on only one other occasion during the previous seven years. While this Court has recognized that delinquent payments may be considered to have been made in the ordinary course of business where late payments were historically the rule, those decisions specifically note that the delinquent payments were not prompted by unusual collection activity on the part of the creditor, but rather was just the way the parties did business. *See In re Narragansett Clothing Co.,* 146 B.R. 609, 612 (Bankr.D.R.I.1992), *In re Miner Indus., Inc.,* 119 B.R. 6, 9 (Bankr. D.R.I.1990). In the instant case, Quality has failed to establish the second element of its ordinary course of business defense, in that the payments by Gangarams to Quality beginning just prior to the preference period were made pursuant to unilaterally imposed terms which were significantly different from the prior course of dealing between the parties. Accordingly, we conclude that payments to Quality in the amount of $50,670.71 are preferences under 11 U.S.C. § 547(b). Finally, Gangarams' proposed conclusion that Quality has not established that the payments were made according to ordinary business terms is rejected.